## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MELISSA BUCANO,                  )
        **Plaintiff**               )
                          )       **C.A.No. 15-67ERIE**
vs.                          )
                          )       **District Judge Rothstein**
KEITH AUSTIN, et al,          )       **Magistrate Judge Baxter**
        **Defendants.**         )


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION


**I.**      **RECOMMENDATION**

It is respectfully recommended that the motion to dismiss filed by Defendant Austin [ECF No. 18] be denied and the motion to dismiss filed by the remaining Defendants [ECF No. 21] be denied.


**II.**     **REPORT**

### A. Relevant Procedural History

Plaintiff, a state inmate formerly incarcerated at SCI Cambridge Springs, initiated this civil rights action through counsel on October 20, 2014. As Defendants to this action, Plaintiff has named: Corrections Officer Keith Austin; Superintendent Joyce Wilkes; Deputy Superintendent M. Clark; Deputy Superintendent Rich Hall; Lt. Wilkes; Unit Manager Sittig; Grievance Coordinator Amy Boylan; Human Resources Coordinator Misty Knaus; and Corrections Officer Zakostelecky.

Defendant Austin has filed a motion to dismiss. ECF No. 20. The remaining Department of Corrections Defendants also move to dismiss. ECF No. 21. Plaintiff has filed a consolidated brief in opposition to the pending dispositive motions [ECF No. 24] and Defendant Austin has filed a reply brief [ECF No. 25]. The present motions are ripe for disposition by this Court.

### B. Plaintiff's Allegations

*Allegations against Defendant Austin*

In 2012, Plaintiff came to be incarcerated at SCI Cambridge Springs in general population on F-A block. ECF No. 13, ¶¶ 13-14. Around February of 2013, Defendant Austin, a Corrections Officer assigned to work evening shift on Plaintiff's block, began to take a personal interest in Plaintiff. Id. at ¶¶ 15, 19. Austin made numerous sexually suggestive remarks to Plaintiff. Id. at ¶ 19. Austin made frequent comments about Plaintiff's breasts and butt and told her his bed was good for having sex in. Id. at ¶ 20. Once when Plaintiff was ill, Austin stated "Were we making out? Because my throat really hurts." Id. at ¶ 22. These sexually suggestive comments continued to escalate. Id. at 23. Austin once told Plaintiff that he wanted "to put my shot down your ass crack." Id.

On March 9, 2013, Austin asked Plaintiff to go into the Corrections Officer's private restroom to retrieve something. Id. at ¶ 24. After she entered the restroom, Austin blocked the exit and told her to expose her bottom and her breasts. Fearing reprisal, Plaintiff complied. Id. at ¶¶ 25-28.

Austin used pat searches as a pretext to fondle Plaintiff almost daily. Id. at ¶ 31. During these searches Austin ran his hands or fingers under Plaintiff's bra line or bra and would ask her

if she was wearing any underwear. Id. at ¶¶ 32-33. At times, Plaintiff would be wearing shorts during these pat searches and Austin would run his hands up Plaintiff's legs and touch her genitals, and "at times Plaintiff felt that Austin's fingers entered her vagina." Id. at ¶¶ 34-35.

Austin, who is African American, asked Plaintiff what her family would think if she gave birth to a black baby. Id. at ¶ 38. When Plaintiff attempted to ignore Austin, he told her she was "due for an ass-whipping." Id. at ¶ 39.

Austin also engaged in stalking-type behavior towards Plaintiff. Id. at ¶ 40. Austin entered Plaintiff's sleeping area while she was asleep and stood at her doorway when she awoke. Id. at ¶ 41. Plaintiff observed Austin staring at her. Id. at ¶ 42. Plaintiff learned that Austin attempted to watch her in the shower. Id. at ¶ 43.

Over time, Defendant Austin became more aggressive. Austin called Plaintiff to the Control Area and demanded that she provide oral sex to him in the Corrections Officer's bathroom. Id. at ¶ 44. Plaintiff refused. Id.

*Allegations as to Other Defendants*

Plaintiff gave Defendant Clark the names of other women who had been harassed by Austin, including Stephanie Kimmel, who was forced to expose herself to Austin. Id. at ¶ 67. Plaintiff believes that other women had complained about sexual harassment by Austin prior to these incidents but no disciplinary actions were taken against Austin. Id. at ¶ 68. Corrections Officer Zakostelecky was aware of Austin's sexual harassment of inmates and failed to report these activities. Id. at ¶ 69. Defendant Sittig was aware of complaints regarding Austin's sexual

misconduct and other improper actions with inmates but she ignored these complaints. Id. at ¶ 70.

Prior to the incidents involving Plaintiff, Inmate Jennifer Daggett submitted a grievance to Defendant Amy Boylan alleging sexual misconduct by Austin, but no action was taken against Austin. Id. at ¶ 45. At least one other female inmate was also inappropriately touched or abused by Austin before he began harassing Plaintiff. Id. at ¶ 46.

On June 2, 2013, Plaintiff submitted an Inmate Request to Staff Member form addressed to Defendant Superintendent Wilkes and noting that she was having trouble with a Corrections Officer. Id. at ¶ ¶ 47-48. Superintendent Wilkes referred Plaintiff to Defendant Sittig, the unit manager. Id at ¶ 49. Sittig interviewed Plaintiff and placed her in RHU on June 4, 2013, pending an investigation. Id. at ¶ 50. While she was in RHU, Defendants Sittig, Knaus, and Superintendent Wilkes directed Plaintiff not to tell anyone about the incident, including anyone in the medical department. Id. at ¶ 57. Accordingly, Plaintiff did not seek medical treatment. Id. at ¶ 58.

On July 12, 2013, Plaintiff was transferred to SCI Muncy and she did not receive any information regarding the incidents with Defendant Austin. Id. at ¶ ¶ 59-60. At SCI Muncy, Plaintiff was required to attend a Prison Rape Elimination Act orientation during which she experienced an emotional breakdown. Id. at ¶ 61.

Around February 26, 2014, Plaintiff was transferred back to SCI Cambridge Springs to testify at an unemployment compensation hearing for Defendant Austin. Id. at ¶ 62. While there, Plaintiff was interviewed by Defendant Lt. Wilkes and Defendant Knaus, who told her that Austin had been fired in December 2013. Id. at ¶ ¶ 63-64. Defendant Knaus again directed

4

Plaintiff not to talk to anyone about the incidents. Id. at ¶ 65. Plaintiff appeared at Austin's

unemployment hearing on March 4, 2014, but Austin failed to appear and lost his claim. Id. at ¶

66.

During Plaintiff's time in the RHU, Superintendent Wilkes, and Deputy Superintendents

Clark and Hall conducted rounds of the RHU.[1] Plaintiff talked to Superintendent Wilkes about

her concerns regarding Austin, but Wilkes ignored these concerns. Id. at ¶ 71. Clark and Hall

also ignored Plaintiff's concerns, but told her she would be transferred to SCI Muncy. Id. at ¶ 72.

Plaintiff was never informed of the results of any investigation of Austin and criminal

charges were never filed against him. Id. at ¶ 76. In June 2014, Plaintiff was requested to return

to SCI Cambridge Springs to testify at Austin's reinstatement hearing. She refused to be present

in person because she would have to be in the same room with Austin, but she testified via

videoconference. Id. at ¶ 77. Austin was reinstated after the hearing and continues to work for

the Pennsylvania Department of Corrections. Id. at ¶ 78.


*Plaintiff's Legal Claims*

Based on the foregoing factual allegations, Plaintiff makes the following legal claims:

Count I – an Eighth Amendment claim against Austin based on sexual abuse and sexual

harassment; Count II – an Eighth Amendment claim against Superintendent Wilkes, Clark, Hall,

Lt. Willes, Sittig, Boylan, Knaus, and Zakostelecky based on their inaction which constituted

deliberate indifference to Plaintiff's safety; Count III – an Eighth Amendment claim against

Superintendent Wilkes, Clark, Hall, and Lt. Wilkes based on their failure to properly investigate

---

[1] The complaint does not indicate the dates upon which these "rounds" occurred.

5

prior allegations of impropriety by Austin as deliberate indifference; Count IV – an Eighth

Amendment claim against all Defendants based on the failure to follow policy DC-ADM 008

regarding cross gender supervision and male employees announcing themselves before entering

a unit; Count V – an Eighth Amendment claim against Sittig, Knaus, and Superintendent Wilkes

for deprivation of necessary medical attention; and Count VI – a claim of Intentional Infliction of

Emotional Distress against Austin. Id.


### C. Standard of Review -- Motion to dismiss pursuant to Rule 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b) (6) must be

viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the

complaint must be accepted as true.  Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint

must be dismissed pursuant to Rule 12 (b) (6) if it does not allege "enough facts to state a claim

to relief that is plausible on its face." Twombly, 550 U.S. at 570. See also Ashcroft v. Iqbal, 556

U.S. 662 (2009) (specifically applying Twombly analysis beyond the context of the Sherman

Act).

A Court need not accept inferences drawn by a plaintiff if they are unsupported by the

facts as set forth in the complaint.  See California Pub. Employee Ret. Sys. v. The Chubb Corp.,

394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906

(3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations.

Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S.  265, 286 (1986). See also

McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a

court must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D. Del.) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n.3.

The Third Circuit has expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:
>
> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

#### D. Defendant Austin's Motion to Dismiss

##### 1. *"De Minimis* use of force"

Initially, Defendant Austin moves for dismissal of the claims against him arguing that

Plaintiff has failed to state a constitutional claim because she has not alleged more than a "*de*

*minimis* use of force." Defendant Austin downplays Plaintiff's allegations, maintaining that:

> Not every malevolent touch by a prison officer gives rise to a federal civil rights claim. […] To the extent the alleged fondling only occurred for a brief time and was isolated, the allegations against Officer Austin do not amount to sexual assault or abuse under the Eighth Amendment. Many of the incidents alleged do not involve any touching on the part of the Officer. For example, he is supposed to have stared at her and on one occasion, asked for oral sex, which she refused. At another time, he is alleged to have asked her to show her breasts to him, which she did. These events are not violations of the Eighth Amendment.

ECF No. 19, pages 6-7.

Defendant misconstrues the legal standard to be applied to the facts alleged and the claim

pled. Under the Eighth Amendment, prisoners are constitutionally protected from cruel and

unusual punishment. Farmer v. Brennan, 511 U.S. 825 (1991). The Eighth Amendment prohibits

conditions of confinement that violate "evolving standards of decency" or which "involve the

unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 102-03 (1976).

Among the guarantees associated with Eighth Amendment protection is the right to "humane

conditions of confinement." Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 256 (3d Cir.

2010) quoting Farmer, 511 U.S. at 832.

Sexual abuse of a prisoner by a corrections officer may in some circumstances violate the

prisoner's right to be free from cruel and unusual punishment under the Eighth Amendment.

Boddie v. Schnieder, 105 F.3d 857, 860-61 (2d Cir. 1997). See also Frietas v. Ault, 109 F.3d

1335, 1338 (8th Cir. 1997) ("[B]ecause the sexual harassment or abuse of an inmate by a

corrections officer can never serve a legitimate penological purpose and may well result in

severe physical and psychological harm, such abuse can, in certain circumstances" give rise to an

Eighth Amendment claim); Jones v. Culinary Manager II, 30 F.Supp.2d 491, 497 (E.D. Pa. 1998)

("Sexual harassment of a prisoner by a prison official or guard can rise to the level of an Eighth

Amendment violation."). "Rape, coerced sodomy, unsolicited touching of women prisoners'

vaginas, breasts and buttocks by prison employees are simply not part of the penalty that

criminal offenders pay for their offenses against society." Schwenk v. Hartford, 204 F.3d 1187,

1197 (9th Cir.2000) (citations omitted). Uninvited sexual contact that is done maliciously and

sadistically to cause harm and that does not advance any legitimate penological interest is the

type of conduct that is "inconsistent with contemporary standards of decency" and that is

"repugnant to the conscience of mankind," and thus violates the Eighth Amendment. Id. at 1196–

97. [2] But see Banks v. Rozum, 2015 WL 1186224, at *14 (W.D. Pa. Mar.13, 2015) (holding that

two pat-down searches in which inmate's testicles were squeezed did not constitute an Eighth

Amendment violation).

 Here, Plaintiff has alleged sufficient facts to state an Eighth Amendment claim against

Austin. Accordingly, Defendant Austin's motion to dismiss should be denied in this regard.

### 2. Compensatory Damages

---

[2] Although the Third Circuit "has not specifically addressed the circumstances under which a correctional officer can be held liable for the sexual harassment of an inmate," other federal courts have held that "sexual harassment in the absence of contact or touching does not establish excessive and unprovoked pain infliction" as is required to state a claim for a constitutional violation. Chambliss v. Jones, 2015 WL 328064, at *3 (M.D. Pa. Jan.26, 2015) (citations omitted).Verbal abuse or harassment **alone** are not generally actionable under § 1983 as they do not rise to the level of a constitutional violation. See MacLean v. Secor, 876 F.Supp. 695, 698-99 (E.D. Pa. 1995) ("[i]t is well-established that verbal harassment or threats ... will not, without some reinforcing act accompanying them, state a constitutional claim"). Here, Plaintiff alleges much more than mere verbal harassment.

Next, Defendant Austin moves to dismiss the compensatory damages claim against him because Plaintiff has failed to allege any physical injury as he believes is required by the Prison Litigation Reform Act.

As a result of the violation of her constitutional rights, Plaintiff alleges that she was traumatized by Austin's actions and experienced great pain and suffering, severe emotional distress, and shame, embarrassment, and humiliation. Plaintiff claims that she continues to suffer daily due to the incidents involving Austin and she suffers from post-traumatic stress disorder, depression, fear of being alone, the constant feeling of being stalked. Plaintiff also suffers from insomnia, nightmares, an erratic appetite, and headaches. ECF No. 13, ¶ ¶ 79-81.

With respect to this type of injury, federal law provides that no civil action may be brought by a prisoner "for mental or emotional injuries suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). The statute defines the term "sexual act" as inclusive of "the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person" 18 U.S.C. § 2246(2)(C).

Plaintiff alleges that Austin's fingers penetrated her vagina. ECF No. 13, ¶ 35. Although Plaintiff does not explicitly state that Austin penetrated Plaintiff's vagina with his fingers "with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person," the allegations throughout the complaint indicate that Austin's actions were taken with the requisite intent. See id. at ¶ 20 (Austin's frequent comments about Plaintiff's anatomy and his bed); ¶ 22 (Austin's comments about kissing); ¶ 23 (Austin's comment that he wanted "to put

[his] shot down [Plaintiff's] ass crack"); ¶ ¶ 25-28 (Austin demanding that Plaintiff expose

herself to him); ¶ 44 (Austin demanding that Plaintiff perform oral sex on him).

Defendant Austin's motion to dismiss should be denied in this regard.

### 3. Prison Rape Elimination Act

Finally, Defendant Austin argues that the PREA does not provide for a private remedy or

cause of action. However, Plaintiff has not advanced any claim based solely on the violation of

the Act and Plaintiff acknowledges that failure to comply with the PREA regulations does not

itself rise to the level of a constitutional violation. ECF No. 24, page 9. Plaintiff reasons that the

failure to comply with the regulations, as well as other Department of Corrections policy,

constituted deliberate indifference and further exacerbated Plaintiff's situation.

### E. Remaining Defendants' Motion to Dismiss

### 1. Declaratory Judgment

Defendants argue that Plaintiff's request for declaratory judgment should be dismissed as

moot because Plaintiff only alleges past conduct and is no longer incarcerated at SCI Cambridge

Springs.

The Declaratory Judgment Act creates a remedy by which federal courts "may declare

the rights and other legal relations of any interested party seeking such declaration" when there is

a "case of actual controversy." 28 U.S.C. § 2201(a). As the Supreme Court has explained, in

order for there to be a "case of actual controversy," it must be

> one that is appropriate for judicial determination. A justiciable controversy is thus
> distinguished from a difference or dispute of a hypothetical or abstract character;

11

from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

Aetna Life Ins. Comp. v. Haworth, 300 U.S. 227, 240-41 (1937).

An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims. Sutton v. Rasheed, 323 F.3d 236, 248 (3d Cir. 2003) quoting Abdul-Akbar v. Watson, 4 F.3d 195, 197 (3d Cir. 1993) (former inmate's claim that the prison library's legal resources were constitutionally inadequate was moot because plaintiff was released five months before trial). However, claims are not mooted when a challenged action is (1) too short in duration "to be fully litigated prior to its cessation or expiration"; and (2) "there [is] a reasonable likelihood that the same complaining party would be subjected to the same action again." Abdul-Akbar, 4 F.3d at 206.

While Plaintiff has been transferred out of SCI Cambridge Springs, she could be returned there given that SCI Cambridge Springs is one of only two state correctional institutions in Pennsylvania which house women. Furthermore, Defendant Austin has been re-employed at SCI Cambridge Springs.

Plaintiff's request for declaratory judgment should not be dismissed as moot.

### 2. Compensatory Damages

Like Defendant Austin, these Defendants claim that Plaintiff's request for compensatory relief should be dismissed because Plaintiff has not alleged any physical injury as required by § 1997e(e). These Defendants implausibly insist that none of Plaintiff's allegations fall within the

statute's definition of "sexual act." As discussed above, Plaintiff's allegations are more than sufficient in this regard.

The motion to dismiss should be denied.

### 3. Sovereign Immunity

Next, these Defendants argue that the state law claim of intentional infliction of emotional distress should be dismissed on the basis of sovereign immunity. However, this state law claim is not advanced against any of these Defendants. Defendant Austin did not raise sovereign immunity as the basis of his motion to dismiss.

### 4. Lack of Personal Involvement

Defendants argue that they should be dismissed because Plaintiff has failed to allege their personal involvement in the alleged constitutional deprivations.

To establish liability under § 1983, a plaintiff must allege that the prison official was personally involved in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988). Liability under § 1983 cannot be predicated solely on *respondeat superior.* Rizzo v. Goode, 423 U.S. 362 *1976). See also Monell v. Department of Social Services, 436 U.S. 658 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action). When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986).

The complaint contains sufficient factual allegations against each of the Defendants to implicate their personal involvement in the constitutional violations. For example, Plaintiff alleges that that Zakostelecky was aware of Austin's harassment and failed to report it; that Sittig was aware of Austin's misconduct and ignored inmate complaints; that Superintendent Wilkes, and Deputy Superintendents Hall and Clark ignored Plaintiff's continuing concerns about Austin after she was transferred to the RHU; that Superintendent Wilkes, Sittig and Knaus interfered with Plaintiff's access to medical care; and that Boylan investigated a grievance by another inmate who complained of sexual misconduct by Austin, but did nothing to prevent further incidents against other inmates. These allegations are sufficient to withstand the present motion to dismiss and the motion to dismiss should be denied.

In opposition to Defendants' motion to dismiss, Plaintiff contends that Superintendent Wilkes, Deputy Superintendents Clark and Hall, and Lt. Wilkes should be held liable based on their supervisory positions as policymakers. Although Defendants do not counter this argument by way of a reply brief, this Court does not view the complaint as attempting to state a claim that these Defendants are liable as policymakers.

### 5. Deliberate Indifference in the non-medical context

Next, Defendants argue that the Eighth Amendment claims should be dismissed for failure to state a claim where Plaintiff fails to allege facts establishing that Defendants were aware of and disregarded a significant risk of harm to Plaintiff.

To make out an Eighth Amendment claim based on prison conditions, the plaintiff must show "he has suffered an objectively, sufficiently serious injury [or deprivation], and that prison

14

officials inflicted the injury with deliberate indifference." Farmer, 511 U.S. at 834. The first

prong of the Farmer test is an objective one: Plaintiff must demonstrate that he has been

incarcerated under conditions posing a substantial risk of serious harm. Id. The second prong of

the Farmer test is a subjective one, requiring plaintiff to demonstrate that defendants acted with

deliberate indifference. To establish deliberate indifference: 1) a prison official must know of

and disregard an excessive risk to inmate health or safety; 2) the official must be aware of facts

from which an inference could be drawn that a substantial risk of serious harm exists, and 3) the

official must also draw the inference. Id. at 837. Thus, "deliberate indifference describes a state

of mind more blameworthy than negligence," and requires "more than ordinary lack of due care

for prisoner's interests or safety." Id. at 835.

Defendants argue that Plaintiff has failed to allege facts establishing that these

Defendants were aware of and disregarded a significant risk of harm to Plaintiff. Defendants are

inaccurate in this regard. For example, Plaintiff alleges that multiple other female inmates

complained of sexual harassment by Austin prior to the incidents involving her; that at least one

other inmate filed a written grievance about Austin's sexual harassment, yet Austin continued to

work on the block often being the only officer on duty; that Zakostelecky was aware of Austin's

harassment and failed to report it; that Sittig was aware of Austin's misconduct and ignored

inmate complaints; and Superintendent Wilkes, and Deputy Superintendents Hall and Clark

ignored Plaintiff's continuing concerns about Austin after she was transferred to the RHU.

These allegations, among others, are sufficient to establish that these Defendants were

aware of Austin's proclivity toward sexual harassment and abuse of inmates and that they did

nothing to prevent it. Such allegations are sufficient to survive a motion to dismiss and the

motion to dismiss should be denied.


### 6. Deliberate indifference in the medical context

In the medical context, a constitutional violation under the Eighth Amendment occurs

only when prison officials are deliberately indifferent to serious medical needs. Estelle v.

Gamble, 429 U.S. 97 (1976). The standard is two-pronged, "[i]t requires deliberate indifference

on the part of prison officials and it requires that the prisoner's medical needs be serious." West

v. Keve, 571 F.2d 158, 161 (3d Cir. 1978). A serious medical need is "one that has been

diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would

easily recognize the necessity for a doctor's attention." Monmouth County Corr'al Inst. Inmates

v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). Deliberate indifference to a serious medical need

involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such

indifference can be manifested by an intentional refusal to provide care, delayed medical

treatment for non-medical reasons, denial of prescribed medical treatment, and a denial of

reasonable requests for treatment that results in suffering or risk of injury. Durmer v. O'Carroll,

991 F.2d 64, 68 (3d Cir.1993).

Here, Defendants argue:

> "Plaintiff does not allege that she informed the Defendants that she was
> emotionally distraught or otherwise required medical or mental health care
> following the March 2013 incident. Further, Plaintiff alleges that the instruction
> did not occur until after June 4, 2013, approximately 3 months after the March
> incident."

16

ECF No. 22, pages 12-13.[3]

These Defendants attempt to draw Plaintiff's underlying claim of harassment and abuse against Austin too narrowly and limit it to the March 2013 incident in which Austin demanded that Plaintiff expose herself to him. However, Plaintiff's claim is broader than one single incident. Plaintiff alleges the harassment began in March and continued up through early June. Over time, the harassment escalated and became more persistent. After Austin demanded that Plaintiff perform oral sex on him, she began the grievance process on June 2, 2013. Two days later she was placed in RHU "pending investigation." At that time, Defendants Superintendent Wilkes, Sittig and Knaus directed Plaintiff not to tell anyone "including anyone in the medical department" and "because of this warning" Plaintiff did not seek medical care despite "the trauma she was suffering." ECF No. 13, ¶ ¶ 57-58.

After months of harassment and abuse, it is plausible that Plaintiff was suffering from a serious medical need and that these Defendants were deliberately indifferent to that need by moving her to RHU and instructing her to keep quiet about the abuse thereby denying her medical treatment. While this claim may be difficult to prove at trial, Plaintiff has sufficiently pled it at this early stage of the proceedings.

Defendants' motion to dismiss should be denied.


### 7. Non-compliance with Department of Corrections policies

---

[3] This is Defendants' entire argument in support of their motion to dismiss this claim.

Finally, Defendants argue that the Eighth Amendment claims based on non-compliance with Department of Corrections policies should be dismissed because policies do not create a right in Plaintiff.

Plaintiff has not advanced any legal claim solely on Defendants' failure to abide by Department of Corrections policy. Plaintiff's legal claim is that the violation of policy is part of the deliberate indifference alleged, not that the violation of policy is per se actionable. See ECF No. 13, ¶ 89. This will be an argument that Plaintiff should be permitted to make to the ultimate factfinder.

Defendants' motion to dismiss should be denied in this regard.


## III.    CONCLUSION

It is respectfully recommended that the motion to dismiss filed by Defendant Austin [ECF No. 18] be denied and the motion to dismiss filed by the remaining Defendants [ECF No. 21] be denied.

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation by February 26, 2016.  Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto, but no later than March 11, 2016.   See Fed.R.Civ.P. 72(b)(2).  Failure to file timely objections may constitute a waiver of appellate rights.  See Brightwell v. Lehman, 637 F.3d 187, 194 n.7 (3d Cir. 2011); Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
                                            SUSAN PARADISE BAXTER
                                            United States Magistrate Judge

Dated: February12, 2016