UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| Melissa Bucano, | ) | |
|---|---|---|
| *Plaintiff*, | ) | C.A. No.    15-67 Erie |
| v. | ) | |
| | ) | ORDER ADOPTING IN PART THE |
| | ) | REPORT AND RECOMMENDATION OF |
| Keith Austin, et al., | ) | MAGISTRATE JUDGE BAXTER TO |
| | ) | DENY DEFENDANTS' MOTIONS FOR |
| *Defendants*. | ) | SUMMARY JUDGMENT |
| | ) | |

Plaintiff Melissa Bucano, a former prisoner at the State Correctional Institution at Cambridge Springs ("SCI Cambridge Springs") brings the present 42 U.S.C. § 1983 action against Defendants in their personal capacity. Am. Compl., Doc. 13. Specifically, Plaintiff alleges that Defendant Keith Austin, a correctional officer formerly employed at SCI Cambridge Springs, violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment by sexually harassing and abusing her (Count I); and that Austin intentionally inflicted emotional distress upon her (Count VI). Plaintiff further alleges that other employees of SCI Cambridge Springs ("the Cambridge Springs Defendants")[1] violated her Eighth Amendment right by acting with deliberate indifference to her safety and medical needs both before and after the abusive events at issue (Counts II-V). Austin and the Cambridge Springs Defendants moved for summary judgment, respectively, arguing, in relevant part, that Plaintiff failed to exhaust her administrative remedies.

Before the Court is the Report and Recommendation ("R&R") [85] of the Honorable Susan

---

[1] The individual defendants held the following titles at SCI Cambridge Springs: Wilkes was the Superintendent; Clark was a Deputy Superintendent; Hall was a Deputy Superintendent; Sittig was a Unit Manager; Boylan was a Grievance Counselor; Lt. Wilkes was partly in charge of security; Knaus was a Human Resources Coordinator; and Zakostelecky was a correctional officer. Compl. ¶ ¶ 5-12. Plaintiff does not oppose the entry of summary judgment in favor of Defendant Amy Boylan. Doc. 73 at 1 n.1. Accordingly, Boylan shall be terminated from the case.

1

Paradise Baxter, United States Magistrate Judge, recommending that the Court deny the motion for summary judgment filed by Austin [57] and grant the motion for summary judgment filed by the Cambridge Springs Defendants [61]. Specifically, the R&R found that Plaintiff did not fail to exhaust her administrative remedies as to her claims against Defendant Austin, but that Plaintiff did fail to exhaust her administrative remedies as to her claims against the Cambridge Springs Defendants. Doc. 85. Plaintiff and Austin each filed objections [Pl's. Objs., Doc. 88; Austin's Objs., Docs. 86, 87]; Plaintiff filed a response to Austin's objections [92]; and Austin filed a reply in support of his objections [95]. Additionally, the Cambridge Springs Defendants filed a response to Plaintiff's objections [96]; and Plaintiff filed a reply in support of her objections [99]. Having reviewed the Complaint, the briefs of the parties, the R&R, and the entirety of the record, the Court adopts in part the decision of the Magistrate Judge, and respectfully remands the matter for the Magistrate Judge's consideration of the merits of Plaintiff's claims against the Cambridge Springs Defendants, and whether these Defendants are entitled to qualified immunity.

## I. LEGAL STANDARDS

When a party files objections to an R&R, the district court must review the Magistrate's findings *de novo*. *United States v. Raddatz*, 447 U.S. 667, 673 (1980); Fed. R. Civ. P. 72(b). To obtain *de novo* review, a party must clearly and specifically identify those portions of the R&R to which it objects. *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984). The district court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the Magistrate Judge. *Raddatz*, 447 U.S. at 673-74; *see also* 28 U.S.C. § 636(b)(1).

Summary judgment is proper "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of

material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Weldon v. Kraft, Inc.*, 896 F.2d 793, 797 (3d Cir. 1990) (citing *Sorba v. Pennsylvania Drilling Co.,* 821 F.2d 200, 204 (3d Cir.1987), *cert. denied,* 484 U.S. 1019 (1988)).

## II.   PLAINTIFF'S CLAIMS AGAINST DEFENDANT AUSTIN

The facts of this case are presented fully in the R&R and in the Court's previous orders. *See* Doc. 85; *see also* Doc. 26; Doc. 33. Accordingly, the Court addresses here only those facts and legal issues relevant to the parties' objections and responses thereto. Docs. 86-87, 88, 92, 95, 96, 99. The gravamen of the parties' objections and responses thereto concern whether Plaintiff exhausted the DOC's administrative remedies; and, if not, whether she should be excused from not having exhausted because those remedies were unavailable to her.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that prisoners exhaust their available administrative remedies before filing any suit involving prison life, "whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Indeed, exhaustion is required "even where the relief sought—monetary damages—cannot be granted by the administrative

3

process." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). In order to properly exhaust their claims, prisoners must comply with the administrative review process set forth by the relevant prison's grievance process, including properly availing themselves of "all administrative remedies." *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218; *accord Spruill*, 372 F.3d at 231 ("Mandatory exhaustion (with a procedural default component) ensures that inmate grievances will be addressed first within the prison's own system—in this respect, the PLRA is thus appropriately defederalizing"). Failure to exhaust is an affirmative defense; prisoner-plaintiffs are not required to plead or demonstrate exhaustion. *Jones*, 549 U.S. at 216.

The following are Plaintiff's allegations, which, in the context of Austin's motion for summary judgment, the court must view in the light most favorable to Plaintiff. *Weldon,* 896 F.2d at 797. Plaintiff was initially incarcerated at SCI Muncy, but was transferred to SCI Cambridge Springs in September 2012. Moves Report, Doc. 63-2 at 4. Beginning in February 2013, Defendant Austin subjected Plaintiff to a series of inappropriate sexual comments and directives, and unwanted sexual contact.[2] Compl. ¶¶ 19-23; Pl's. Dep., Doc. 75-1 at 10. Austin's conduct persisted until June 4, 2013, when Plaintiff reported some of Austin's behavior to Defendant Sittig,

---

[2] For instance, in March 2013, Austin ordered Plaintiff to enter the correctional officers' ("COs'") private bathroom with him, and, once inside, ordered Plaintiff to expose parts of her body. Pl's. Decl., Doc. 78-1 at 2-3. During "frequent," random pat searches, Austin would "run his hands or fingers" under Plaintiff's bra line and "up her legs" while asking if she was wearing any underwear. *Id.* at 2. "At least once," Plaintiff "felt that Austin's fingers entered [her] vagina." *Id.* As the weeks passed, Plaintiff felt that Austin "engaged in stalking behavior" towards her. *Id.* For example, Plaintiff would wake up to find Austin standing in her cubicle staring at her; and Plaintiff was told by another inmate that Austin would watch her while she was in the shower, at times ordering other inmates in the bathroom "out of the way so that he could have a clear view." *Id.* at 4.

4

Plaintiff's Unit Manager.[3] 6/4/13 Employee Report of Incident, Doc. 78-1 at 20.

Following this meeting, Plaintiff was immediately placed in the Restricted Housing Unit ("RHU"), where inmates are housed in solitary confinement and kept in their cells for 23 hours per day. 6/4/13 Employee Report of Incident, Doc. 78-1 at 20; Pl's. Decl., Doc. 78-1 at 5. Plaintiff remained in the RHU during the pendency of the Office of Special Investigations and Intelligence ("OSII") investigation into Austin. *See* Employee Reports, 6/4/13 DC-141, Doc. 78-1 at 23; 6/9/13 DC-141, Doc. 78-1 at 25; 7/3/13 DC-141, Doc. 78-1 at 27. Plaintiff spoke with an OSII investigator at some point in June 2013. Pl's. Dep., Doc. 75-1 at 19. After approximately six weeks in the RHU, Plaintiff was transferred to SCI Muncy on July 11, 2013. DOC Cell History, Doc. 78-2 at 17-18.

By a three-sentence letter dated August 6, 2013, OSII informed Plaintiff that its investigation had been closed. Doc. 78-1 at 60. Specifically, OSII stated that Plaintiff's "allegations of abuse against staff at [SCI] Cambridge Springs have been thoroughly investigated. Abuse was not established; however, based on this investigation, further administrative action will be taken. The investigation is now closed and no further action will be taken by this office regarding this matter." *Id.*[4] Plaintiff did not "appeal" or otherwise formally challenge OSII's letter.

---

[3] On June 2, 2013, Plaintiff submitted a DC-135A "Inmate Request to Staff Member" form asking, *inter alia*, to whom she should speak about her "having issues with a unit officer." Doc. 78-1 at 18. On June 4, 2013, Defendant Wilkes responded, in writing, that Plaintiff should speak with her Unit Manager, Defendant Sittig. *Id.* Having received an email from Wilkes that Plaintiff was "having trouble with a [s]taff member," Sittig called Plaintiff to her office for a meeting that same day. 6/4/13 Employee Report of Incident, Doc. 78-1 at 20. Plaintiff told Sittig that "Austin had been sexually harassing her for months." *Id.* Plaintiff provided Sittig some examples of lewd and sexual comments that Austin had made, and detailed for Sittig the March 2013 CO bathroom incident. *Id.*

[4] The "administrative action" to which OSII referred included the formation of a Pre-Disciplinary Committee tasked with investigating whether Austin had violated various DOC ethics provisions, including the prohibition against sexual harassment and sexual contact with inmates. Knaus Dep., Doc. 65-8 at 57. After the Committee held two conferences, during which Austin was afforded the opportunity to respond to Plaintiff's allegations, Austin's employment was terminated effective November 8, 2013. 8/9/2013 PDC Notification Letter, Doc. 78-1 at 31-33; 9/30/2013 PDC Notification Letter, Doc. 78-1 at 35-38; Termination Letter, Doc. 78-1 at 39.

### A. Plaintiff Exhausted Her Claims Against Austin

Austin, in his objections, argues that in order to properly initiate the DOC's administrative process, inmates must file DC-804 Official Grievances within 15 days of the event(s) at issue, as set forth in the Department of Corrections Administrative Direct ("DC-ADM") 804, "Inmate Grievance System." *See* Objs., Doc. 87 at 8-11; *see also* Br. in Support of Summ. J., Doc. 58 at 8-9. Here, Plaintiff only reported Austin's conduct to Sittig; she did not file a corresponding DC-804 grievance. Thus, Austin argues, Plaintiff did not exhaust her administrative remedies. *See* Doc. 87 at 10; Doc. 58 at 3-9.

DC-ADM 804 sets forth the DOC's "Inmate Grievance System." DC-ADM 804 Policy Statement, Doc. 66-3 at 6 ("It is the policy of the Department that every individual committed to its custody shall have access to a formal procedure through which to seek resolution of problems or other issues of concern arising during the course of confinement."). DC-ADM 804 provides for an initial review and two levels of appeal. At the initial stage, inmates must file a written DC-804 Official Grievance Form within 15 days of the event(s) giving rise to the grievance. *Id.* § I.A, Doc. 78-2 at 47.[5]

However, "allegations of abuse shall be handled in accordance with Department Policy DC-ADM 001, 'Inmate Abuse Allegation Monitoring Process' and/or DC-ADM 008, 'Sexual Harassment of or Sexual Contact with Inmates.'" DC-ADM 804 § I.B.10.[6] Here, Plaintiff

---

[5] The Facility Grievance Coordinator reviews the grievance and issues either an acceptance or a rejection. *Id.* at 46. The Initial Review Response/ Rejection may be appealed to the Facility Manager within 15 days. *Id.* at § II.A, Doc. 78-2 at 59. The Facility Manager's decision may be appealed to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") within 15 days. *Id.* at § II.B. Inmate-plaintiffs who have properly appealed to SOIGA have exhausted their DC-ADM 804 administrative remedies. *See, e.g.*, *Booth v. Churner*, 206 F.3d 289, 303 n.2, *aff'd*, 532 U.S. 731 (2001) (citing DC-ADM 804).

[6] Subsequent to the events at issue here, DC-ADM 001 and DC-ADM 804 were amended such that the DOC now processes allegations of "sexual contact" exclusively pursuant to DC-ADM 008. *See* 6/30/14 DC-ADM 008, PREA Policy Procedures Manual, Doc. 78-4; *see also Moore v. Lamas*, 2017 WL 4180378, at *40 n.4 (M.D. Pa. Sept. 21, 2017).

maintains that she exhausted her administrative remedies pursuant to DC-ADM 008. Pl's. Resp., Doc. 92 at 5-16.

DC-ADM 008 states that an inmate who is "sexually harassed" by a prison employee "should report it to a staff member as soon as possible." DC-ADM 008 § I.A.2, Doc. 64-7 at 10. Though the Directive instructs prison employees as to their duties following an inmate's report of sexual harassment, *id.* § I.A.5-6, it provides no further information as to how inmates should—or must—report sexual harassment. *See generally id.*; *see also id.* § I.A.4 ("An inmate who reports sexual harassment, should provide details of the incident(s)[.]").

The 2009 Inmate Handbook ("Handbook"), however, which Plaintiff received upon her 2012 orientation of the DOC, Doc. 63-2 at 5, instructs inmates as follows:

> If you believe you have experienced sexual harassment by staff…you must report it **as soon as possible**. You may report it to the Unit Manager **and/ or** submit a grievance in accordance with DC-ADM 804. If you file a report, you must include [certain demographic information]. The Unit Manager will initiate a review of the allegation and respond as soon as possible[.]

Handbook § H, Doc. 64-5 at 6 (emphasis added).

Regarding sexual contact, the Handbook provides:

> If you are the victim of sexual contact[,] you should report it to a staff member **as soon as possible**…A toll-free Sexual Assault Reporting Line [] has been established for the general public and inmates…to anonymously report a sexual assault[.]

*Id.* (emphasis added). DC-ADM 008 itself provides that "an inmate who is the victim of sexual contact by…an employee…should report it to a staff member **as soon as possible**." § IV.A.3, Doc. 64-7 at 26 (emphasis added). Though the Directive extensively instructs prison employees as to their duties following an inmate's report of sexual contact, *id.* §§ IV.A-F, Doc. 64-7 at 26-31, it provides no further information as to how inmates should—or must—report sexual contact. *See generally id.*; *see also* DC-ADM 008 § II, "Sexual Abuse/ Assault Prevention and Intervention:

7

Inmate Orientation and Training," Doc. 64-7 at 18 ("How to report an incident of sexual assault—It is important that you tell a staff member if you have been sexually assaulted as soon as possible…Once the assault is reported, the Department and/or other appropriate law enforcement agency will conduct an investigation.").

Accordingly, inmate-plaintiffs alleging sexual harassment and/or sexual abuse properly initiate the DOC's administrative process by reporting the conduct to the Unit Manager and/ or by submitting a DC-804 grievance. In other words, filing an Official Inmate Grievance pursuant to DC-ADM 804 is not required for inmates alleging sexual harassment and/or sexual abuse. *See, e.g.*, *Rosado v. Kissinger*, 03-cv-535, Doc. 46 at 13, (M.D. Pa. Oct. 21, 2003) ("In employing the disjunctive 'or' within the listing" of reporting options in DC-ADM 001, the "DOC has effectively communicated to readers of its policies that they may rest assured that in using any of the enumerated options they have effectively and correctly reported wrongful conduct"); *see also McCain v. Wetzel*, 2012 WL 6623689, at *6 (M.D. Pa. Oct. 26, 2012); *Knauss v. Shannon*, 2010 WL 569829, at *7 (M.D. Pa. Feb. 12, 2010).

Here, Plaintiff alerted prison officials that she was having "an issue with a unit officer," and then reported Austin's conduct to Sittig, Plaintiff's Unit Manager. Thus, Plaintiff properly initiated the DOC's administrative process pursuant to DC-ADM 008 and as explained in the Handbook. *See Knauss*, 2010 WL 569829, at *7 (comparing DC-ADM 804 with DC-ADM 001 and noting that "[t]he Pennsylvania DOC has established several methods by which Pennsylvania inmates can grieve their claims of abuse before seeking redress in federal court"); *Rosado*, 03-cv-535, Doc. 46 at 13 (comparing DC-ADM 804 with DC-AMD 001 and DC-ADM 008 and "reject[ing] [the] contention that DC-ADM 804 is the only appropriate method by which inmates may initiate complaints within the prison"); *Cf.* 28 C.F.R. § 115.52(b)(1) (pursuant to the Prison

Rape Elimination Act ("PREA"), 42 U.S.C. 15601, the DOC "shall not impose a time limit on when an inmate may submit a grievance regarding an allegation of sexual abuse.")[7]

In his objections, Austin alternatively maintains that even if Plaintiff properly initiated the administrative process by reporting Austin's behavior to Sittig, Plaintiff did not appeal the resulting OSII letter informing her that "abuse was not established." *See* Doc. 87 at 8-10. Thus, Austin argues, Plaintiff failed to exhaust her administrative remedies. *See id.* (citing DC-ADM 804 § I.B.10).

However, DC-ADM 008 does not mandate that inmates "appeal" the results of an OSII investigation. *See* DC-ADM 008, Doc. 64-7. In fact, DC-ADM 008 does not provide *any* information regarding how an inmate could "appeal" (or otherwise follow-up concerning) an OSII investigation, or any other action taken by DOC officials in response to an inmate's report. *See id.* Thus, Austin's reliance on DC-ADM 804 § I.B.10 is mistaken. DC-ADM 804§ I.B.10 states that "[a] **grievance** dealing with allegations of abuse shall be handled in accordance with DC-ADM 001 [] and/or DC-ADM 008[.] This may extend the time for responding to the **grievance**, but will not alter the inmate's ability to appeal upon his/her receipt of the Initial Review response." Doc. 66-3 at 45 (emphasis added). This section pertains to inmates who, pursuant to DC-ADM 008, have chosen to report sexual harassment and/or abuse by filing a DC-804 grievance as opposed to reporting it to their Unit Manager. *See* DC-ADM 804 "Glossary of Terms," Doc. 66-3 at 39 ("Grievance—A formal written complaint by an inmate related to a problem encountered during

---

[7] For the same reasons, Plaintiff properly initiated the administrative review process pursuant to DC-ADM 001. *See* DC-ADM 001 § I.VI.D, Doc. 78-5 at 5 ("Any inmate who is the victim of abuse should report the abuse in the following manner: (1) report it verbally or in writing to any staff member; (2) file a grievance in accordance with Department policy DC-ADM 804, 'Inmate Grievance System;' **or** (3) report it in writing to the Department's Office of Professional Responsibility (OPR)") (emphasis added).

the course of his/ her confinement").[8] Accordingly, having reported Austin's conduct to her Unit Manager, and having received a final decision from the resulting investigation by OSII, Plaintiff properly exhausted her administrative remedies as to her claims against Austin. *Cf. Victor v. Lawler*, 565 Fed. Appx. 126, 129 (3d Cir. 2014) (noting that "various District Court opinion[s] [have held] that an inmate need only file a grievance with the [DOC's investigating office] under DC-ADM 001 in order to exhaust administrative remedies," but declining to rule on "what steps would be necessary under that procedure," finding instead that a prisoner-plaintiff who files his complaint before the relevant DOC investigation is complete has failed to exhaust his administrative remedies) (citing *McCain v. Wetzel*, 2012 WL 6623689 (M.D. Pa. Oct. 26, 2012), *Victor v. SCI Smithfield*, 2011 WL 3584781 (M.D. Pa. Aug. 12, 2011), and *Knauss v. Shannon*, 2010 WL 569829 (M.D. Pa. Feb. 12, 2010)); *see also Jones v. Bock*, 549 U.S. 199, 218 (2007); *Small v. Camden Cnty.*, 728 F.3d 265, 263 (3d Cir. 2013). Austin's motion for summary judgment is denied.[9]

---

[8] Moreover, OSII's letter was just that—a letter. Doc. 78-1 at 60. It was not an "Initial Review" as contemplated in § I.B.10. *See* DC-ADM 804 "Glossary of Terms," Doc. 66-3 at 39 ("Initial Review—The first step of the Initial Grievance process during which a Grievance Officer reviews an inmate grievance.").

[9] Having found that, pursuant to DC-ADM 008, Plaintiff properly exhausted her administrative remedies as to her claims against Austin, the Court need not address Austin's objection that Plaintiff's 2014 DC-804 Grievances are substantively deficient. *See* Doc. 87 at 10 (noting that the Grievances "make no mention of any physical contact with Austin[.]"). Further, the Court strongly admonishes Austin's counsel for his continued assertion that even if Austin inserted his fingers into Plaintiff's vagina, the "penetration only occurred once and briefly;" and therefore, Austin's conduct, even if proven, is "*de minimis*" and not implicative of the Eighth Amendment. *See* Doc. 87 at 11-13. In his earlier motion to dismiss, Austin made the identical argument, *see* Doc. 20, which the R&R rejected, Doc. 26 at 7-9. In his objections to that R&R, Austin again asserted this argument. *See* Doc. 27. In adopting the relevant portion of that R&R, the Court reiterated the obvious concept that "sexual assault serves 'absolutely no penological purpose'" and that the "'Eighth Amendment prohibits all punishment'" that is "'totally without penological justification.'" Doc. 33 at 6 (quoting *Farmer v. Brennan*, 511 U.S. 825 (1994)). Nevertheless, in his motion for summary judgment, Austin again advanced this argument. *See* Doc. 58 at 9-11. In the instant R&R, the Magistrate Judge found "counsel's persistence in this argument deeply troubling, given his simultaneous duty to report and initiate prosecution against any DOC personnel accused of the same conduct…[and because i]t is beyond peradventure that the commission of institutional sexual assault is a violation of an inmate's constitutional right to be free from cruel and unusual punishment." Doc. 85 at 17-18. The R&R went so far as to "remin[d]" counsel of "his professional responsibility." *Id.* at 18. Yet, Austin persists in this argument. Therefore, the Court finds that at best, Austin's counsel simply does not read the Court's orders before filing his briefs; and at worst, he is in violation of Pa. Code of Professional Responsibility § 3.1, which prohibits lawyers from bringing "frivolous" claims that are void of "good faith arguments."

### III. PLAINTIFF'S CLAIMS AGAINST THE CAMBRIDGE SPRINGS DEFENDANTS

Plaintiff alleges that the Cambridge Springs Defendants were deliberately indifferent to her safety when, prior to February 2013, they failed to investigate various inmate and staff complaints against Austin (Counts II and III), and when they failed to implement and follow policies pertaining to male COs in female housing units (Count IV). Compl., Doc. 13 ¶¶ 84-89; *see also* Pl's. Resp., Doc. 73 at 2-3. Plaintiff additionally alleges that by directing Plaintiff not to tell anyone, including those in the medical department, about Austin's conduct, the Cambridge Springs Defendants were deliberately indifferent to her serious medical need (Count V). Doc. 13 ¶¶ 90-91. The R&R found that Plaintiff failed to properly exhaust her administrative remedies as to these claims. Doc. 85 at 16. Specifically, the R&R found that because Plaintiff did not file her DC 804 Grievance until December 2014, she failed to timely comply with the initial step of DC-ADM 804, which requires that inmates file an initial grievance within 15 days of the event(s) at issue. *See id.* Additionally, or in the alternative, the R&R found that by failing to appeal the Grievance's Initial Rejection, Plaintiff failed to properly exhaust DC-ADM 804's remedies. *See id.*

Plaintiff does not contest that her December 2014 grievance was untimely pursuant to the text of DC-ADM 804. *See* Pl's. Objs., Doc. 88 at 15-21; Pl's. Opp., Doc. 73 at 12-25. Instead, Plaintiff, in her objections, argues that Defendants prevented her from timely filing. Doc. 88 at 19. Specifically, Plaintiff maintains, Plaintiff was "repeatedly" and "explicitly instructed by those she believed to be fully investigating her complaints, to not discuss anything relating to the sexual abuse with anyone." Doc. 88 at 10. Plaintiff "took this very literally" and understood the instruction to "include communicating about the matters via a grievance." *Id.* A grievance alleging Defendants' failure to protect her from Austin, and failure to subsequently provide her adequate medical care, Plaintiff asserts, "would include communicating about" Austin's conduct. *Id.* Thus,

11

Plaintiff argues, she should be excused from not timely complying with DC-ADM 804's initial step because it was "unavailable" to her. *Id*. at 10-21 (citing *Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016)). Moreover, Plaintiff asserts, "[a]s soon as [Plaintiff] was advised by [SCI Muncy] prison staff that she could file grievances on the issues," Plaintiff maintains, "she did." Doc. 88 at 13.

The PLRA contains a "built-in exception to the exhaustion requirement: A prisoner need not exhaust remedies if they are not 'available.'" *Ross*, 136 S. Ct. at 1859 (quoting 42 U.S.C. § 1997e(a)). "[W]hen prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation," an "inmate's duty to exhaust 'available' remedies does not come into play." *Id.* at 1860.

Here, according to Plaintiff, on June 4, 2013, when she reported Austin's conduct to Defendant Sittig, Sittig told Plaintiff "not to talk to anyone" about Austin's conduct. *See* Pl's. Decl., Doc.78-1 at 5. According to Sittig, Sittig told Plaintiff that Plaintiff "probably shouldn't discuss the situation with other inmates." Sitting Dep., Doc. 64-3 at 25. Sittig is "sure" she also told Plaintiff that she would "call the Deputy immediately [s]o we can have this situation handled[.]" *Id*. Sittig then immediately escorted Plaintiff to the RHU, where Plaintiff remained for six weeks. *See* Doc. 78-1 at 23, 25, 27. While in the RHU, Plaintiff alleges, Defendants Sittig, Knaus, and Lt. Wilkes, all told Plaintiff "not to tell anyone about the incident, including anyone in the medical department." Pl's. Decl., Doc. 78-1 at 5. Thus, Plaintiff asserts, "as much as [she] would've loved to talk to" the prison's psychiatrists, Plaintiff "respected [Defendants'] wishes" to remain silent. Pl's. Dep., Doc. 75-1 at 37-38.

Plaintiff was transferred to SCI Muncy on July 11, 2013. Doc. 78-2 at 17-18. Despite having made "frequent inquiries into the status of [OSII's] investigation," at the time of Plaintiff's transfer, she "still had received no information." Pl's. Decl., Doc. 78-1 at 6.

Approximately six weeks later, by letter dated August 6, 2013, OSII informed Plaintiff that while "[a]buse was not established…based on this investigation, further administrative action will be taken." Doc. 78-1 at 60. Thus, Plaintiff maintains, she believed that Defendants' directive to remain silent about Austin's conduct was still in effect, pending this "further administrative action." *See* Pl's. Objs., Doc. 88 at 10, 13.

The "administrative action" to which OSII referred included the formation of a Pre-Disciplinary Committee tasked with investigating whether Austin had violated various DOC ethics provisions, including the prohibition against sexual harassment and sexual contact with inmates. Knaus Dep., Doc. 65-8 at 57. After the Committee held two conferences, during which Austin was afforded the opportunity to respond to Plaintiff's allegations, Austin's employment was terminated effective November 8, 2013. 8/9/2013 PDC Notification Letter, Doc. 78-1 at 31-33; 9/30/2013 PDC Notification Letter, Doc. 78-1 at 35-38; Termination Letter, Doc. 78-1 at 39.

In late 2013, Austin applied for unemployment compensation. Austin's Dep., Doc. 75-2 at 47. According to Plaintiff, in early 2014, she was "contacted" by "prison staff" about testifying at an unemployment hearing related to Austin. *See* Pl's. Decl., Doc. 78-1 at 5. In February 2014, Pennsylvania's Unemployment Compensation Board subpoenaed Plaintiff to testify at Austin's benefits hearing, which was scheduled for March 4, 2014. Doc. 78-1 at 62.

In anticipation of Plaintiff's testimony, on February 27, 2014, Plaintiff was transferred back to SCI Cambridge Springs. 2/27/14 DC-141, Doc. 78-1 at 29. When Plaintiff arrived at SCI Cambridge Springs, Defendants Knaus and Lt. Wilkes escorted Plaintiff to the RHU, where they housed her for the week of the hearing. Wilkes Dep., Doc. 76-2 at 26. Defendant Lt. Wilkes admits that, as they were escorting Plaintiff to the RHU, Knaus "told [Plaintiff] not to talk to anybody

13

about it," after which Lt. Wilkes "reiterated…yeah, make sure you don't talk to anybody about what [you are] speaking about today." *Id*.

At some point following the hearing, Austin was denied unemployment benefits. Austin Dep., Doc. 75-2 at 47. Austin appealed, triggering an arbitration hearing. *Id*. Prior to the June 2014 arbitration hearing, Plaintiff was again "contacted" by "prison staff" and asked to testify. Pl's. Decl., Doc. 78-1 at 6. Plaintiff appeared and testified at the arbitration hearing by video conference. *Id*.; 6/17/14 Arbitration Hearing Tr., Doc. 77-3.[10]

In December 2014, Plaintiff alleges that a staff member at SCI Muncy informed her that she could file a DC-804 grievance regarding Austin's conduct and the DOC's response thereto. *See* Doc. 88 at 13. Thus, on December 15, 2014, Plaintiff filed Grievance 543147 alleging that between February 2013 and June 2013 she was sexually harassed and abused; and that SCI Cambridge Springs had failed to protect her and failed to provide her adequate medical care. Doc. 78-1 at 44.[11]

Defendants, in either their response to Plaintiff's Objections, or in their earlier reply brief, do not address Plaintiff's argument that Defendants' machination, misrepresentation, or intimidation should excuse Plaintiff's failure to timely file her grievance. *See* Resp., Doc. 96 at 6-7 (addressing only Plaintiff's alternative argument that had Plaintiff timely filed a DC-804

---

[10] Defendant Superintendent Wilkes also testified, and reported that Austin "certainly" sexually harassed Plaintiff and potentially other female inmates, and that the DOC considered Austin a "predator." Doc. 77-3 at 53. Nevertheless, at some point following the hearing, Austin's employment was reinstated. Austin Dep., Doc. 75-2 at 48.
[11] In full, Plaintiff grieved that: "From Feb[ruary] 2013 until June 2013, I was subjected to sexual harassment and sexual abuse. When I had the courage to come forward, I was put in the RHU and was mistreated as if I did something wrong. I was even told not to discuss this issue with medical/ psych [and] other certain staff. I was repeatedly told this, even when I was transferred to Muncy. When I was transported back to [SCI Cambridge Springs] for court due to this matter, I was told the same thing. I feel like [SCI Cambridge Springs] has not dealt with this issue properly [and] SCI Muncy knew yet never followed through with anything. I will not have my rights violated anymore, and want my rights preserved under the statute of limitations. [SCI Cambridge Springs] was negligent in protecting me and their other inmates." As relief, Plaintiff sought "care for [her] PTSD, etc., due to the above, and [to] seek pain and suffering compensation for damages." Doc. 78-1 at 44.

14

grievance, it would have been rejected as duplicative of her DC-ADM 008 report); Reply, Doc. 83 at 2-4 (addressing only what Plaintiff did, or failed to do, with her grievance after it was rejected). Nor do Defendants seriously dispute that they told Plaintiff that she should not discuss Austin's conduct. *See* Statement of Material Facts, Doc. 62 at 13 ("Plaintiff states that she took these statements to mean that she should not discuss anything with staff at SCI Cambridge Springs; however, that was only her understanding of what Sittig, Wilkes, Clark, Hall and Knaus meant when they told her not to discuss the investigation. None of the staff directed Plaintiff not to seek attention if she wanted or needed mental health treatment.")[12] However, "[f]ailure to exhaust administrative remedies is an affirmative defense that must be pled and proven by the defendant." *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002); *see also Jones v. Bock*, 549 U.S. 199, 216 (2007).

In any event, viewing the evidence in the light most favorable to Plaintiff, on June 4, 2013, when Plaintiff reported Austin's conduct, Sittig responded by telling her not to discuss the matter. After Plaintiff's meeting with Sittig, the record is clear that for at least the next year, Defendants repeatedly told Plaintiff not to discuss the matter—even *after* Austin had been fired. There is no evidence that Defendants informed Plaintiff that Austin's employment had been terminated; or, that prior to Plaintiff's receiving the February 2014 subpoena from the unemployment compensation board, she had any reason to believe that the administrative action to which OSII referred had been concluded. In fact, the administrative action was not concluded until sometime after sometime after Austin's June 2014 arbitration hearing. Moreover, contrary to DOC policy,

---

[12] Further, Defendants fail to provide the 15-day window within which Plaintiff's grievance would be considered timely. *See* Defs.' Mot. For Summ. J., Doc. 67 at 9; Defs'. Resp., Doc. 96 at 3-7. Ostensibly, Defendants maintain that Plaintiff should have grieved her failure to protect claims no later than June 19, 2013 (15 days after she reported Austin's conduct); and that Plaintiff should have grieved her denial to adequate medical care claims either no later than July 26, 2013 (15 days after her transfer to SCI Muncy), or March 19, 2014 (15 days after she was returned to SCI Cambridge Springs, where she was once again placed in the RHU, before testifying at Austin's unemployment hearing).

immediately following Plaintiff's initial report, Defendants housed her in the RHU, where inmates are kept in solitary confinement and in their cells for 23 hours per day. *See* DC-ADM 008 § IV.B.5, Doc. 78-3 at 76 (following an inmate's report, an "inmate/ victim should be closely monitored in general population and he/ she should **only** be placed in Administrative Custody…if he/ she cannot be protected by any other means.") (emphasis added). Further, despite Plaintiff's having been housed in the general population at SCI Muncy—and despite the fact that Austin no longer worked at SCI Cambridge Springs—Defendants returned Plaintiff to SCI Cambridge Spring's RHU when they transferred her back to their prison to testify at Austin's unemployment hearing. Thus, on the record before the Court, and in the absence of any argument to the contrary, the Court finds that Plaintiff's failure to timely file her grievance pursuant to DC-ADM 804 is excused due to Defendants' conduct. *See Ross*, 136 S. Ct. at 1860 (collecting appellate court cases "in which officials misled or threatened individual inmates so as to prevent their use of otherwise proper procedures…[thereby] interfer[ing] with an inmate's pursuit of relief [and] render[ing] the administrative process unavailable. And then, once again § 1997e(a) poses no bar.").

To the extent that Defendants maintain that even if Plaintiff's failure to timely file her grievance is excused, she nonetheless failed to exhaust DC-ADM 804's remedies because she did not appeal the grievance's subsequent rejection, *see* Doc. 96 at 7, they are mistaken. Former Defendant Boylan rejected Plaintiff's Grievance because, *inter alia*, it "related to" "DC-ADM 008 PREA policy," which "shall be handled according to the procedures specified" in DC-ADM 008, "and shall not be reviewed by the Facility Grievance Coordinator[.]" Doc. 78-1 at 56. Plaintiff should "[b]e advised," Boylan wrote, that her claims "will not be addressed in this forum." *Id.* It is nonsensical for Defendants to argue that Plaintiff should have used an appellate procedure provided for by DC-ADM 804 when they expressly told her that they would not address her claims

16

pursuant to DC-ADM 804. *See, e.g.*, *Ross*, 136 S. Ct. at 1860 (citing *Booth v. Churner*, 532 U.S. 731, 736, 738 (2001) ("[A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise,) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates.")). Accordingly, to the extent that Plaintiff failed to exhaust DC-ADM 804's remedies, her failure is excused. Thus, the Court respectfully declines to adopt the R&R as to the Cambridge Springs Defendants, and denies Defendants' motion as it relates to Plaintiff's failure to exhaust her administrative remedies. *See id.*; *see also Small v. Camden County*, 728 F.3d 265, 269-70 (3d Cir. 2013) ("[E]xhaustion is a question of law to be determined by a judge, even if that determination requires the resolution of disputed facts…[I]t is of no consequence that here, as is often the case, there are disputed facts that must be resolved in order to determine whether the claims were exhausted.").[13]

In their motion for summary judgment, the Cambridge Springs Defendants additionally argue that Plaintiff's claims fail on the merits, and, in any event, that they are entitled to qualified immunity. Doc. 67 at 10-18. The R&R did not address these arguments because it found that Plaintiff failed to exhaust her claims. Doc. 85. Thus, the Court remands the matter to Magistrate Judge for consideration of these issues. Accordingly, the Court **HEREBY ORDERS**:

(1) The Court **ADOPTS** the Report and Recommendation [Doc. 85] as to Defendant Austin, and respectfully **DECLINES TO ADOPT** it as to the remaining Defendants;

(2) Defendant Austin's Motion for Summary Judgment [Doc. 57] is **DENIED**;

---

[13] Accordingly, the Court need not address Plaintiff's additional argument that she did, in fact, properly exhaust her claims pursuant to DC-ADM 804 because the Superintendent's January 2015 letter, which came three days after Boylan's rejection, constituted a decision on the merits of Plaintiff's claims. *See* Doc. 88 at 11. Additionally, the Court need not address Plaintiff's alternative argument that whether she exhausted her claims against the Cambridge Springs Defendants is governed by DC-ADM 008 and not DC-ADM 804; and that for the same reasons that she exhausted her claims against Austin, Plaintiff exhausted her claims against the Cambridge Springs Defendants. Doc. 88 at 5-13.

17

(3) The Cambridge Springs Defendants' Motion for Summary Judgment [Doc. 61] is **DENIED** as to Plaintiff's failure to exhaust her administrative remedies;

(4) This case is **REMANDED** to Magistrate Judge Baxter for consideration of the Cambridge Springs Defendants' remaining arguments [Docs. 57 and 67];

(5) Defendant Boylan is terminated from this case;

(6) The clerk shall send copies of this Order to the parties.

**IT IS SO ORDERED**.

DATED this 13th day of October, 2017.

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE